# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF VIRGINIA

## Alexandria Division

Jackie Lee Helms,  )
    Plaintiff,  )
                        )
v.  )    1:18cv430 (AJT/TCB)
                        )
Dr. Amonette, et al.,  )
    Defendants.  )

## MEMORANDUM OPINION AND ORDER

Jackie Lee Helms, a Virginia inmate acting pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging in relevant part that he suffered deliberate indifference to his serious medical needs when he was not provided with appropriate medication for his hepatitis C infection.[1] The matter is presently before the Court on a Motion to Dismiss for Failure to State a Claim filed by defendant Dr. Amonette, the Chief Physician for the Virginia Department of Corrections ("VDOC"), to which Helms has filed no response. For the reasons which follow, defendant's Motion will be granted.[2]

## I. Background

In the Amended Complaint, which is the operative complaint in the lawsuit, plaintiff makes the following allegations regarding Dr. Amonette:

> Dr. Amonett [sic] does not know me by face or name only by my #1026097 an[d] my liver enzymes count threw [sic] my Blood lab work. He controlls [sic] who get liver treatment for hepatitis C.

Dkt. No. 13, § IV. In an attachment to the amended complaint, Helms adds:

---

[1] Helms also asserts in the amended complaint that he is not receiving adequate treatment for his chronic dry mouth condition, but those allegations are not directed at Dr. Amonette.

[2] Two other defendants, Helms' "primary care physician" at his place of incarceration and the institution's medical administrator, have not yet filed dispositive motions in the lawsuit.

> [T]his is the only way Dr. Amonett [sic] knows of me threw [sic] my lab work I never seen him.
>
> I think if he knew my age 7-4-56 will be 62 he would treat and cure my hepatitis C now.

Helms also supplies a form captioned Laboratory/Diagnostic Test(s) Results dated May 1, 2018, which states:

> Please be advised that your recent laboratory/diagnostic test(s) have been received and reviewed by the facility Medical Practitioner and the following has been recommended for your continued care:
>
> Labs/x-ray/procedure is within normal limits; provider is aware. There is no referral to the Provider at this time. You will be followed in your next chronic care clinic.

Id., unnumbered attachments 2-3. As relief, Helms seeks the issuance of an order directing VDOC to treat his liver condition with the drug Harvoni. Id. § V.

Dr. Amonette has moved to dismiss Helms' claim on the grounds that the amended complaint fails to state a claim against him either in his personal capacity or for supervisory liability. He supplied Helms with the notice required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) and Local Rule 7K [Dkt. No. 25], and Helms has filed no response. Accordingly, this matter is ripe for disposition.

## II. Standard of Review

Rule 12(b)(6) allows a court to dismiss those allegations which fail "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When determining whether a motion to dismiss should be granted, the alleged facts are presumed true and the complaint should be dismissed only when "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to meet this standard, id., and a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level...." Twombly, 550 U.S. at 55.

Where a plaintiff is unrepresented, "pleadings should not be scrutinized with such technical nicety that a meritorious claim should be defeated, and even if the claim is insufficient in substance, it may be amended to achieve justice." Leeke v. Collins, 574 F.2d 1147, 1151 (4th Cir. 1978), citing Rice v. Olson, 324 U.S. 786 (1945). The Supreme Court has directed that a pro se complaint should not be dismissed summarily unless "it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines v. Kerner, 404 U.S. 519, 521 (1972), quoting Conley v. Gibson, 355 U.S. 41, 45 - 46 (1957).

In addition, Local Rule 7(K)(2) of the Eastern District of Virginia requires counsel for a party who files a dispositive motion in a lawsuit brought by a pro se party to inform that party that the Court could dismiss the action on the basis of the moving party's papers if no response is filed. In this case, as noted above, Dr. Amonette supplied Helms with the appropriate notice. [Dkt. No. 25 at 2]

### Analysis

As the defendant argues, even when plaintiff's allegations are accepted as true, see

Erickson v. Pardus, 551 U.S. 89, 94 (2007), and he is given the deference afforded to pro se litigants, Leeke, 574 F.2d at 1151, he fails to state a claim against Dr. Amonette for which relief can be granted.

To the extent that Helms may intend to sue Dr. Amonette in his personal capacity for failing to treat Helms' hepatitis C properly, it is readily apparent that Dr. Amonette can have no such liability. To state a cause of action under § 1983, a plaintiff must allege facts indicating he was deprived of rights guaranteed by the Constitution or laws of the United States and that the deprivation resulted from conduct committed by a person acting under color of state law. See West v. Atkins, 487 U.S. 42 (1988). Thus, a defendant must have had personal knowledge of and involvement in the alleged violation of plaintiff's constitutional rights for the action to proceed against him. Id. Here, plaintiff states that he never saw Dr. Amonette, and that Dr. Amonette knows him "not .. by face or name only by ... [his] liver enzymes count." It thus is apparent from Helms' allegations that Amonette was not personally involved in treating Helms' hepatitis C and cannot personally have rendered constitutionally deficient medical care for that condition.

Nor do Helms' allegations state a plausible claim for Dr. Amonette's liability as a non-treating official. To state a § 1983 medical claim against a non-treating prison official, an inmate must show that the official was personally involved with a denial of treatment, deliberately interfered with the prison doctor's treatment, or tacitly authorized or was indifferent to misconduct by the prison physician. Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). Helms makes no such allegations here, and nothing in the amended complaint plausibly suggests that Dr. Amonette was aware of any inadequacy in Helms' medical treatment, denied treatment to Helms, interfered with Helms' medical care, or otherwise ignored Helms' medical needs.

4

Instead, Helms suggests only that if Dr. Amonette knew that he is 62 years old, Amonette "would treat and cure my hepatitis C now." Given the fact that the lab report Helms has included among his exhibits reflects that his readings were "within normal limits," his supposition appears to be misplaced.[3] But even were that not so, a claim that amounts to nothing more a disagreement between a prisoner and medical personnel over the course of his treatment will not support an Eighth Amendment cause of action. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). Under these circumstances, the amended complaint does not provide a sufficient factual basis upon which a reasonable factfinder could conclude that Dr. Amonette was subjectively and deliberately indifferent to Helms' hepatitis C infection.

To the extent that Helms may intend to sue Dr. Amonette under a theory of supervisory liability for the acts or omissions of VDOC medical staff, his claim again falls short. Supervisory officials may be held liable only in limited circumstances for constitutional injuries inflicted by their subordinates. Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994). Such liability is not premised on respondeat superior, but rather upon "a recognition that supervisory indifference or tacit authorization of subordinates misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." Id. at 798. "[L]iability ultimately is determined 'by pinpointing the persons in the decisionmaking chain whose deliberate indifference permitted the constitutional abuses to continue unchecked.'" Id. To establish supervisory liability under § 1983, a plaintiff must demonstrate that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) the supervisor's

---

[3] See United States ex rel. Constructors, Inc. v. Gulf Ins. Co., 313 F. Supp. 2d 593, 596 (E.D. Va. 2004) (courts may consider exhibits attached to a complaint).

response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices;" and (3) there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. Id. at 799 (citations omitted). Overall, "[t]he plaintiff ... assumes a heavy burden of proof in supervisory liability cases," because "[h]e must not only demonstrate that the prisoners face a pervasive and unreasonable risk of harm from some unspecified source, but he must show that the supervisor's corrective inaction amounts to deliberate indifference or 'tacit authorization of the offensive [practices].'" Slakan v. Porter, 737 F.2d 368, 372 (4th Cir. 1984). "[H]e cannot satisfy his burden of proof by pointing to a single incident or isolated incidents , ...[n]or can he reasonably be expected to guard against the deliberate criminal acts of his properly trained employees when he has no basis upon which to anticipate the misconduct." Id.

Here, Helms alleges no facts which would support a claim of supervisory liability against Dr. Amonette. His nonspecific allegations regarding his own allegedly deficient medical care, which are quoted in full supra, fall far short of alleging a pervasive and widespread practice of medical indifference that posed an unreasonable risk of harm. He does not allege that any "documented widespread abuses" are being met with supervisory inaction. And most critically, he does not allege any facts from which it could be inferred that he suffered a constitutional injury as the result of Dr. Amonette's inaction. It is recognized in this circuit that the causation requirement for supervisory liability "is a stringent one" and requires proof that the challenged action was "'the moving force' behind the ultimate violation." Jones v. Wellham, 104 F.3d 620, 627 (4th Cir. 1997), quoting Polk County v. Dodson, 454 U.S. 312, 326 (1981). Accordingly, "mere but-for causation will not suffice," and "the challenged policy decision must be one that made the ultimate violation almost bound to happen, sooner or later, rather than merely likely to

happen in the long run." Id. Patently, the amended complaint in this case is devoid of any allegations that suggest, much less show, that any inaction on Dr. Amonette's part was the "moving force" that caused Helms to suffer an actual injury. For these reasons, it is

ORDERED that the Motion to Dismiss for Failure to State a Claim of Dr. Amonette [Dkt. No. 23] be and is GRANTED, and the claim against Dr. Amonette is DISMISSED WITH PREJUDICE.

This is not a final Order for purposes of appeal. Plaintiff's claims against the two remaining defendants are still under consideration and will be resolved at a later date by separate Order. Therefore, this ruling is interlocutory, and plaintiff must wait for a final order to be entered at the conclusion of the case to appeal this Memorandum Opinion and Order.

The Clerk is directed to send a copy of this Memorandum Opinion and Order to plaintiff pro se and to counsel of record for all defendants.

Entered this 11th day of March 2019.

Alexandria, Virginia

/s/
Anthony J. Trenga
United States District Judge